MCCLARNON ET AL. *v.* STAGE, EXECUTOR, ET AL.

[No. 27,172. Filed February 20, 1939.]

*Charles L. Tindall,* and *Cook & Walker,* for appellants.

*W. W. Ratliff,* and *White & Haymond,* for appellees.

SWAIM, J.—This action was instituted by the appellee, Arthur L. Stage, as executor of the last will and testament of Mary E. McClarnon, deceased, to obtain

an order for the sale of real estate for the purpose of procuring funds with which to pay certain bequests, debts and the costs of administration of the estate. The appellants were all made defendants to the action as the heirs, beneficiaries and personal representatives of Daniel G. McClarnon, the surviving husband of the testatrix who was named as the residuary legatee in her last will and testament and who died subsequent to her death.

The appellants, by answer and cross-complaint, challenged the validity of Item II of the last will and testament of the said Mary E. McClarnon on the ground that the bequest of $2,000.00 to the Trustees of Glencove Cemetery of Knightstown for the purposes of establishing a permanent trust fund for the maintenance of certain graves in said cemetery, was in violation of the statute against perpetuities. The court found for the appellee executor and ordered the real estate sold. This appeal is based on the alleged error of the court in holding that Item II of said will created a valid bequest and trust, and in ordering the real estate in question sold for the purpose of paying said bequest.

Mary E. McClarnon died on December 14, 1932. Her will had been executed on August 27, 1932. The item in question is as follows:

### "ITEM II

"I direct and it is my will that the sum of Two Thousand Dollars ($2,000.00) be paid out of my estate to the Trustees of Glencove Cemetery, of Knightstown, Indiana, as a Trust Fund to be placed at interest by said Trustees, and the interest therefrom used as a permanent fund towards filling with flowers the two vases on my father's family lot in said cemetery each and every summer, and to paint the vases and settee every summer, and to clean the markers and monument when necessary, and

for placing fresh flowers in appropriate and proper style on each of the five graves, viz.: Father's, Mother's Husband's, Brother's and my own, on Decoration Day and on my Mother's grave on 'Mother's Day' each and every year."

The appellants contend that this bequest is void as being in violation of the statute against perpetuities; that the cemetery in question is a public cemetery; that Acts of 1915, ch. 142, p. 581 (§21-214 Burns 1933, §4668 Baldwin's 1934), provides the only legal method of creating a perpetual trust for the maintenance and care of public cemeteries; and that said bequest does not conform to said 1915 act.

The Act of 1915, *supra,* provides as follows:

"That the county commissioners of any county in this state shall be required and authorized to receive from any person or .persons a deposit or legacy of money to be held in trust in perpetuity or for such period as the donor or testator shall designate in writing, the interest of which shall be used for the purpose of keeping in good condition any abandoned cemetery or any public or incorporated cemetery, or any lot or lots, monuments, mausoleums, vaults or other burial structures in any cemetery of the state, . . ."

It is apparent that the bequest in question does not conform to the provisions of the above statute. It may also be admitted for the purposes of this case that the cemetery is a public cemetery. This leaves as the only question for our consideration the appellants' contention that, after the 1915 act became effective such a bequest to be valid had to be made to the county commissioners of the county where the cemetery was located. With this contention, we cannot agree.

Acts of 1913, ch. 158, p. 417 (§21-212 Burns 1933, §4689 Baldwin's 1934), provides another method of creating such a trust. Section 1 of said act provides as follows:

"That any church, corporation or association which owns a cemetery shall have the power to receive from any person a deposit or legacy of money to be held in trust in perpetuity, or for such period as the donor or testator shall designate in writing, the earnings of which deposit or legacy shall be used for the purpose of keeping in good condition any lot or lots, monument, vault or gravestone in said cemetery that may be designated by such donor or testator."

Appellants apparently concede that this act is broad enough to cover the bequest as set out in Item II of said will, but insist that this act is repealed by the 1915 act. While the 1915 act requires and authorizes the county commissioners to receive a deposit or legacy of this nature it does not say that they shall receive *all* such deposits or legacies, nor does it provide that any person creating such a trust by will or gift *shall* make such legacy or gift payable to such county commissioners. There is no such irreconcilable conflict between these two statutes as would result in the repeal by implication of the former. *Straus Bros. Co.* v. *Fisher* (1926), 200 Ind. 307, 317, 163 N. E. 225. Nor is there such an inconsistency between the two statutes as would bring the former within the repealing section of the latter. The repealing section of the 1915 act provided:

"Sec. 5. All laws and parts of laws inconsistent herewith are hereby repealed; but it shall in no wise affect a bequest, legacy or endowment now in the hands of the board of directors of any incorporated cemetery, or which may hereafter come to their hands in accordance with the law made and provided for in such cases."

Each of the two statutes provides for a different method of creating such a trust, and a trust created pursuant to the provisions of either statute would not be in violation of the statute against perpetuities.

The construction placed on the 1915 act by subsequent legislatures is helpful in arriving at this conclu-

sion. Chapter 89, Acts of 1907, p. 117, was an act entitled "An Act concerning cemeteries, the incorporation of boards of regents for the same, authorizing cities to transfer the title, management and control thereof to such boards, and authorizing such boards and cities to receive and manage donations and devises of money for the preservation and care of lots in such cemeteries, and declaring an emergency." This statute provided that any city owning or having the management and control of any cemetery might set up a board of regents to hold and manage such cemetery, and section 4 of said act gave such board power "to receive from any person a deposit, or legacy of money, the principal or interest thereof to be used in perpetuity, or for such period as the donor, or testator, shall designate in writing for the purpose of keeping any lot or lots, in said cemetery, or monument, vault, or gravestone in good condition or repair." This section of said act was amended in 1911, 1913, and 1923. As finally amended in 1923, Acts of 1923, ch. 9, p. 27, the right of such board to receive, from any person, a deposit or legacy of money to be held in trust in perpetuity for the purpose of keeping in good condition any graves, lots, etc., was still recognized. The legislature of 1923 clearly did not interpret the 1915 statute as providing that such a bequest could be left only to the board of county commissioners.

In 1927 the legislature passed "An Act concerning the establishment of a permanent maintenance fund for municipally owned cemeteries." Acts of 1927, ch. 7, p. 18. This legislature evidently also interpreted the 1915 act as not providing for an exclusive method of setting up such fund in perpetuity, because it provided that such gifts and bequests for the permanent general maintenance fund might be received by the city owning the cemetery. This latter act was amended by

the legislature in 1931 to cover gifts, donations and bequests of money or property for the permanent maintenance of particular lots.

The General Assembly of 1933 enacted another statute (Acts of 1933, ch. 84, p. 554), which again provided for the acceptance of gifts and bequests for the maintenance, operation, care or preservation of any city-owned or city-controlled cemetery or any portion thereof, by a board to be appointed by the mayor.

None of the above statutes made any mention of the 1915 statute. It must be presumed that the General Assemblies of 1923, 1927, 1931, and 1933, while enacting laws relating to the acceptance of gifts and bequests for permanent maintenance funds for cemeteries, were acquainted with and had in mind the provisions of the 1915 statute which provided that the county commissioners should be authorized and required to receive such funds. *State ex rel.* v. *Board* (1911), 175 Ind. 400, 402, 94 N. E. 716. None of such subsequent legislatures construed the 1915 act as giving the county commissioners the exclusive right to receive such funds. While not conclusive on the courts, a uniform construction given to the statute by several subsequent legislatures is entitled to consideration and where there is ambiguity in the earlier statute or a possibility of different constructions, the construction given by later statutes may be persuasive of the legislative intent. *Yarlott* v. *Brown* (1923), 192 Ind. 648, 138 N. E. 17.

There is nothing in said Act of 1915, *supra,* that repeals or modifies, either by implication or directly, any part of the Act of 1913, *supra.* The Act of 1915 provides an additional method by which a donor may create such a trust. By the 1913 act a donor could give a gift or legacy establishing such a trust to "any church, corporation or association which owns a

cemetery." By the Act of 1907, *supra,* as amended, a donor could make such a gift or bequest to the board of any city of this state owning or having the management or control of a cemetery, and by the Act of 1915 a donor could create such a trust fund for any public cemetery by making the gift or legacy to the county commissioners of the county where the cemetery was located. The trust in question, created by Item II of testatrix' will, pursuant to the 1913 statute, was valid and did not violate the statute against perpetuities.

The judgment of the Delaware Circuit Court is in all things affirmed.

Roll, J., absent.